UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY A. NALEPKA,

    *Plaintiff,*

   v.

LIVINGSTON COUNTY SHERIFF,
ADVANCED CORRECTIONAL HEALTHCARE,
MICHAEL MURPHY, JEFFREY WARDER,
JEFF LEVEQUE, CHRISTOPHER DIEHL,
TAMMY DEMPSEY, and STROM,

    *Defendants*.
_____/

CASE NO. 20-cv-11130
DISTRICT JUDGE BERNARD A. FRIEDMAN
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT OR PRELIMINARY INJUNCTION (ECF No. 3)**

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order (TRO) and Permanent or Preliminary Injunction, (ECF No. 3), be **GRANTED IN PART** as to a TRO, and **DENIED IN PART** as to a permanent or preliminary injunction.

**II.   REPORT**

   **A.   Introduction**

On April 2, 2020[1] Plaintiff Gregory A. Nalepka, who appears before the Court *pro se*, filed this complaint against Defendants Livingston County Sheriff, Advanced Correctional Healthcare, Michael Murphy, Jeffrey Warder, Jeff Leveque, Christopher Diehl, Tammy Dempsy, and an individual identified only as "Deputy Strom" (ECF No. 1, PageID.5) (collectively, "Defendants"), alleging retaliatory conduct in violation of the First Amendment, violations of the right to due process under the Fifth Amendment, the proscription against cruel and unusual punishment under the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment, in addition to several claims under the Michigan state constitution. (*Id*. at PageID.6.) At the time of filing, Plaintiff was confined at the Livingston County Jail ("the jail"), where he is being held as a pretrial detainee. (*Id*. at PageID.7.)

Plaintiff filed a complaint on April 2, 2020 (ECF No. 1), and the present Motion for preliminary injunctive relief on April 2, 2020. (ECF No. 3.) All pretrial matters were reassigned to the undersigned Magistrate Judge on May 28, 2020. (ECF No. 7). Judge Friedman then clarified that the order of reference also included the discretion to decide this Motion for injunctive relief on May 28, 2020. (ECF No. 8.) Below, I summarize the allegations set forth in the instant Motion, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

    **1.**        **Factual Background**

---

[1] This Amended Report & Recommendation was filed to correct a clerical error regarding the date that Plaintiff filed his complaint.

In Plaintiff's complaint, he indicates that he is a pretrial detainee being held at the jail. (ECF No. 1, PageID.7.) Plaintiff's complaint focuses on the alleged lack of precautions taken by the jail against the virus COVID-19, or, coronavirus ("the virus"). Plaintiff alleges that Defendants are "allowing policies [and] practices to continue to occur within the Livingston County Jail that place inmates (to include, but not limited to myself) at risk by not wearing the proper protective gear (gloves, masks) [and] not seeing to it that trustees who handle our food, store items, etc. wear the proper protective equipment." (*Id*. at PageID.8.) Plaintiff specified that laundry was only done once a week and that new inmates were not tested for the virus before entering the population with other inmates. (*Id*.) Plaintiff complains that inmates do not have cleaning supplies to clean surfaces regularly. (*Id*.) Further, Plaintiff complains that Defendants, who "have constant contact with society every day," are endangering him and other inmates by failing to practice or enforce "social distancing" (standing at least six apart). (*Id*.) Plaintiff alleges that he and other inmates are not provided with antibacterial soap, hand sanitizer, or bleach. (*Id*.)

Plaintiff complains that, as a result of the alleged lack of virus protections, he suffers "mental anguish [and] distress," and notes that "mental health classes have been cancelled, depriving myself [and] many others of treatment [and] help." (*Id*.) Plaintiff alleges that he has sustained "mental psychological injuries due to the conditions the defendants are placing me in with Coronavirus pandemic occurring." (*Id*. at PageID.11.) According to Plaintiff, the jail cancelled mental health classes, stating that they are "non-essential." (*Id*.)

Finally, Plaintiff alleges that he sent a "notice of intent" to initiate suit against the jail, regarding the lack of precautions, by letter and was threatened by an individual

identified only as Deputy Strom; Plaintiff was told "the letter [and] notice was denied by a Lieutenant," although Plaintiff never received any confirmation. (*Id.* at PageID.8.) According to Plaintiff, Deputy Strom stated, regarding his submitted notice of intent, "I don't know what [you're] trying to do, but you'd better knock it off or you'll have more to worry about than the Coronavirus." (*Id.* at PageID.10.) Plaintiff further alleges that his cellmates were present for and witnessed this interaction with Deputy Strom. (*Id.*) Plaintiff provides that this instance with Deputy Strom took place on April 2, 2020. (*Id.* at PageID.9.) Plaintiff also claims that he suffered mental anguish due to this interaction in particular. (*Id.* at PageID.11.) Plaintiff alleges that he filed a grievance alleging these complaints in "the jail on kiosk," to which the response he received was, "I will voice your concerns to administration;" Plaintiff did not hear anything else about his grievance. (*Id.* at PageID.14.)

Plaintiff seeks $100 in nominal damages, $150,000 in punitive damages, $150,000 in compensatory damages, and the following injunctive relief: (a) all Defendants and co-workers wear protective equipment when working in the jail; (b) all Defendants and co-workers be tested for the virus before working in the jail; (c) all Defendants and co-workers follow the six feet social distancing precautions; (d) Defendants wear protective equipment when passing out food, drinks, and medication; (e) laundry be done more than once a week and a change of uniforms be provided; (f) this Court to grant any and all other relief to Plaintiff that it finds just and proper; (g) regularly available mental health classes; and (h) "it should be understood that all government entities can be considered recipients to legal

mail, just as legal mail can be received from them." (*Id.* at PageID.11-12.) At the time of the preparation of this Report, Defendants have not filed a response.

### B. Motion for TRO and Permanent or Preliminary Injunction

Plaintiff moves for a TRO and permanent or preliminary injunction which would require that several actions and precautions be taken by the jail administration regarding the virus (*Id*). When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Because preliminary relief is "an extraordinary remedy," the movant must make a far more stringent showing of proof than that required to survive summary judgment. *Winger v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Even so, plaintiffs need not present an "overwhelming" showing of potential success on the merits in order to prevail in their motion. *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 679 (S.D. Ohio 2012). "[W]here a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison

setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014).

First, due to the paucity of evidence as to Plaintiff's grievance records—and because Defendants have not yet had an opportunity to respond to this Motion—a permanent or preliminary injunction would be inappropriately premature. See Fed. R. Civ. P. 65(a)(1); *Stevens v. Calvary Chapel of Twin Falls, Inc.*, No. A-15-CA-257-SS, 2015 WL 1608008, at *2 (W.D. Tex., Apr. 8, 2015) (deciding a motion for a TRO and deferring ruling on the motions for preliminary and permanent injunctions until the defendant had "been served and allowed an opportunity to respond."). But, as will be shown, Plaintiff's allegations in his complaint and Motion meet the requirements for the issuance of a TRO.

Federal Rule of Civil Procedure 65(b) imposes additional safeguards on the issuance of TROs because they may be granted *ex parte*. Their issuance may occur without written or oral notice to an adverse party *only* if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." *Id.* 65(b)(1)(A)-(B). Such relief, if granted, may only last a maximum of fourteen days absent an extension for good cause or pursuant to consent from an adverse party. *Id.* 65(b)(2). The court must also schedule a preliminary-injunction hearing "at the earliest possible time" where the party who obtained the order must proceed with the motion or else forfeit the relief. *Id.* 65(b)(3). And the adverse party "may appear and move to dissolve

or modify the order" on two days' notice to "the party who obtained the order without notice . . . ." *Id.* 65(b)(4).

Plaintiff included in his Motion that he feared retaliation if he filed a grievance with the jail regarding his allegations; Plaintiff also had previously filed a grievance alerting the jail to his allegations, but claims he never received confirmation of its receipt or ever heard about it again. (ECF No. 3, PageID.25; ECF No. 1, PageID.8-10.) Plaintiff further complains that this is "a very serious matter that could cause irreparable health problems[.]" (*Id.*) This Court construes those allegations as excuses for failure to provide notice before deciding the questions at hand. In addition, Plaintiff provided that he "declare[s] under penalty of perjury that the [allegations] are true and correct to the best of [his] knowledge and belief." (*Id.*) As such, I suggest that Plaintiff's Motion meets the procedural requirements of Rule 65(b)(1)(A)-(B).

At this stage, Plaintiff must show that "the denial of an *ex parte* temporary restraining order pending a preliminary injunction ruling will result in irreparable harm." *Erard v. Johnson*, 905 F.Supp.2d 782, 791 (E.D. Mich. 2012). Further, "[a]n *ex parte* TRO is only appropriate where the applicant would face irreparable harm so immediate that it would be improper to wait until after a preliminary injunction hearing to enjoin the non-movant's conduct." *Id*. "To constitute irreparable harm, an injury must be certain, great, and actual. Irreparable harm cannot be speculative; the injury complained of [must be] of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Lucero v. Detroit Public Schools*, 160 F.Supp.2d 767, 801 (E.D. Mich. 2001) (internal citations omitted).

COVID-19 has, indeed, posed a unique and unprecedented health concern. On April 26, 2020, Governor Gretchen Whitmer signed into order Executive Order 2020-29, enacted to "mitigate the spread of COVID-19, protect the public health, and provide essential protections to vulnerable Michiganders who are at work or are incarcerated in prisons, county jails," and further to "implement limited and temporary COVID-19-related protocols and procedures regarding entry into facilities operated by the Michigan Department of Corrections" and to "recommend limited and temporary COVID-19 related protocols and measures for county jails[.]" Mich. Exec. Order No. 2020-29 (April 26, 2020). Specifically, in addition to others, the executive order set forth the following required procedures:

1. The Michigan Department of Corrections (the "Department") must continue to implement risk reduction protocols to address COVID-19 ("risk reduction protocols"), which the Department has already developed and implemented at the facilities it operates and which include the following:

a. Screening all persons arriving at or departing from a facility, including staff, incarcerated persons, vendors, and any other person entering the facility, in a manner consistent with guidelines issued by the Centers for Disease Control and Prevention ("CDC"). Such screening includes a temperature reading and obtaining information about travel and any contact with persons under investigation for COVID-19 infection.
. . .

f. Providing, to the fullest extent possible, appropriate personal protective equipment to all staff as recommended by the CDC.

g. Conducting stringent cleaning of all areas and surfaces, including frequently touched surfaces (such as doorknobs, handles, light switches, keyboards, etc.), on a regular and ongoing basis.

h. Ensuring access to personal hygiene products for incarcerated persons and correctional staff, including soap and water sufficient for regular handwashing.

    i. Ensuring that protective laundering protocols are in place.

    . . .

    k. Practicing social distancing in all programs and classrooms—meaning a distance of at least six feet between people in any meeting, classroom, or other group.

*Id*. Plaintiff alleged that Defendants failed to test new inmates or jail employees for symptoms of the virus, wear protective equipment, clean surfaces, provide cleaning products to inmates, launder clothes more than once a week, or practice social distancing. (ECF No. 1, PageID.7-11.) This Court has previously noted the severity of the virus and the threat it poses to prison populations in particular:

> the congregate nature of the Jail—housing hundreds of inmates who share sinks, toilets, and showers, as well as eating, sleeping, and living spaces—makes it an ideal environment for the spread of COVID-19. This, along with the fact that there is an active outbreak of COVID-19 at the Jail and the fact that COVID-19 is a highly infectious virus that poses a significant risk of severe illness and death, particularly for the medically vulnerable, renders the objective component easily satisfied in this case. *Wilson*, ___ F. Supp. 3d at ___, 2020 WL 1940882, at *8 (finding objective component satisfied where jail housed medically-vulnerable population and experienced COVID-19 outbreak); *Valentine*, ___ U.S. ___, 2020 WL 2497541, at *2 (Sotomayor, J.) (noting the district court's "detailed, careful findings," which included "the 'obvious' risk of [COVID-19] to the older men in the [Jail] Unit").

*Cameron v. Bouchard*, ___ F.Supp.3d___, 2020 WL 2569868, at *21 (E.D. Mich. May 21, 2020). As of June 3, 2020, the Center for Disease Control (CDC) reports 397 total cases in Livingston County and 26 deaths. *Cases & Deaths By County*, Ctrs. for Disease Control & Prevention, http://www.cdc.gov/coronavirus/2019-ncov/cases-updates/county-map.html (last updated April 24, 2020). On May 9, 2020, the Detroit Free Press reported that, at that time, 49 prisoners in Michigan prisons had died due to the virus, and that the MDOC "has logged more coronavirus deaths than any other state prison system and ranks

second nationwide behind New Jersey for prisoner deaths per capita, according to The Marshall Project, a nonprofit journalism outfit that reports on the criminal justice system and is tracking the virus in prisons across the country." Angie Jackson & Christie Tanner, *Michigan ranks highest in nation for prisoner deaths from coronavirus*, The Detroit Free Press, May 9, 2020, 6:01 AM, http://www.freep.com/story/news/local/michigan/2020/05/09/prisoner-coronavirus-covid-19-deaths/3090182001/.

Considering the number of positive COVID-19 cases in Livingston County and in Michigan jails and prisons, Plaintiff's claim of injury is not speculative, even if harm has not happened to him yet. *See Wilson v. Williams*, ___ F. Supp. 3d ___, 2020 WL 1940882, at *9 (N.D. Ohio April 22, 2020) ("there is a continued risk of harm to others, including prison staff, if inmates remain in the prison and the virus continues to thrive among the dense inmate population."); *cf. Burley v. Mich. Dep't of Corr.*, No. 2:16-cv-10712, 2017 WL 1095078, at *5 (E.D. Mich. Feb. 24, 2017) (Morris, M.J.) ("[T]he fear that he cannot protect himself from potential attacks remains far too speculative to entertain seriously. . . And even so, nothing aside from his bald assertion indicates that his professed fears will be validated in the future.").

Plaintiff's allegations of failure to use protective equipment, practice social distancing, or provide cleaning materials and disinfectants go directly against publicly available information and guidance from the CDC to prisons and jails. The jail is a living environment consisting of close quarters, and, according to the study from The Marshall Project cited by the Detroit Free Press, an environment in which the virus is likely to

flourish and spread quickly. Even if "nothing yet had happened" to Plaintiff, he has proved that, without protections taken by the jail, he is living with an "exposure [] to serious, communicable disease." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Plaintiff has demonstrated that he is "incarcerated under conditions posing a substantial risk of serious harm[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjection that Plaintiff alleges here, if true, to unsafe conditions posed by the virus and produced by Defendants is sufficient to demonstrate immediate and irreparable injury.

For these reasons, Plaintiff's allegations tend to demonstrate that immediate and irreparable injury will follow a failure to grant the relief requested, and this analysis weighs in favor of granting his TRO.

### C. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary or Permanent Injunction, (Doc. 3), be **GRANTED IN PART** as to the TRO, and **DENIED IN PART** as to the Preliminary or Permanent Injunction.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 17, 2020                                S/ PATRICIA T. MORRIS
                                               Patricia T. Morris
                                               United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Gregory A. Nalepka #105291 at Livingston County Jail, 150 S. Highlander Street, Howell, MI 48843.

Date: June 17, 2020                                          By s/Kristen Castaneda
                                                                              Case Manager